This case may be like the first on the calendar this morning in which there was a single accuser and no witnesses. The defense today, as was the defense in 2000 when this case was tried, was that no robbery took place. This is not about whether the mental state element of robbery has been met. It's about whether a robbery took place at all. And there were five factors, five evidentiary factors, in addition to my client's own testimony, that were readily available to cast doubt upon or refute the quote-unquote victims' testimony. But sadly, only one of those factors was brought out at trial due to the ineffective assistance of counsel. And I'd like to address each of those at some point, but I'd first like to direct the Court's attention to trial counsel's closing argument, which is in the reporter's transcript at pages 1816 through 1835. And I think that probably provides the best overview of the missions in this case. He at trial had developed only one of those five factors. Of course, he didn't put my client on to testify, but he had developed only one of those factors, and that factor was that the client had $42 in his pants and was employed, which made him a rather unusual street thug. The balance of his argument was nothing but hyperbole. I mean, he had made an attempt to make the point that my client had a legitimate reason for being on the sidewalk at that point at night, but the prosecutor objected when he attempted to make the point and took him into chambers or up to the bench and successfully kept it out because the trial counsel had failed to develop the evidentiary support for it. So he had only one of five factors, and he was left with nothing but hyperbole. As an example, he argued that there was no evidence that his client spoke Spanish, so I guess that there could have been no communication between he and the victim. However, his client, as you will see in the picture of my client in the exhibits, is obviously a very dark, static man. He argued that the victim was drunk, but the only evidence we have in the record from the victim's own mouth was that he had one beer and we have the officers testifying that they didn't smell any excessive alcohol on him and he didn't appear to be drunk. He argued that the victim did not have diabetes, and the reason he raised that was he felt that it exemplified that the victim was lying, that he just told the officers that so that the officers wouldn't think that he was drunk. And his final point of hyperbole was that he argued that there was a misidentification of my client and of the knife. When my client had been found within a few feet of the purported robbery. So I think that best exemplifies the inadequacies of the defense. The four factors that are available in addition to my client's testimony was he did have a legitimate purpose to be there, and his mother and girlfriend would have provided testimony. We have their declarations that he hadn't eaten that evening and his mother had the suspicion about it. He pork before you get it put a bed. It doesn't agree with you. And so he was on his way to Tacos Unicos, which was two blocks away. Is this your basic argument that you don't like the closing argument or? No, I was just an example of how inadequate the defense was. And I know, but you've used almost half your time and you're not telling us what's the basic ineffectiveness here. What did counsel not do that he should have done? Counsel did not put on the five factors that that refuted or cast doubt upon the victim's testimony. And he didn't put his client on the stand to to directly refute it. If typically you keep saying five factors, what specifically? OK, what did he not do? The second factor is the legitimate purpose for being on the street. The first factor was the one that he did put on. The third factor was the client was well-groomed. Substantiates the fact that he had just come home off of a date. The victim did testify that he was dirty. But this this is his fill in from the trauma. Are you not talking about his failure to develop a defense that he had this all these prior incidents that made him afraid that he had this post-traumatic? Oh, indeed. Indeed. And I just haven't got there. Well, you better get there. You've now got less than five minutes and you haven't gotten certified. That was the only issue certified by this court was the prior assaults and the impact they had on his mental state. I'm sorry. The only issue certified by this court was the question of the failure to introduce the prior assaults and the effect on your client's mental state. When he created this encounter. Well, indeed, that was very significant. And it was it was part of the of the whole milieu of omissions. And that was I was working towards the climax, towards the end, which indeed I should have done. But but it explained it explained the reason why the client was carrying a knife. It provided a good explanation for why he was carrying a knife. It provided a it provided the explanation for for why he would misinterpret the situation and brandish a knife. And and it also it provided some explanation for why the victim, the victim. I'm saying that the victim either confabulated or fabricated that the robbery occurred. I think it was confabulation because I think that this is filling. The victim was frightened because he was carrying eight hundred dollars on him. It was late at night. Who knows what the effect of his mental health, mental condition was. But it was late at night. He was carrying eight hundred dollars and someone was walking up, closing a gap behind him. And and they both misinterpret the situation. And my client overreacted for the reasons that we now know and brandished a knife. And it just scared the hell out of the victim. And he and he and he filled in the rest. And and the the evidence of the significance of this is that look how quickly this thing dissolved. I mean, they had this brief standoff and then my client walked away. I mean, is this is this an attempted robbery? I thought the defense was it just didn't happen at all. It didn't happen at all. No. Well, at trial, at trial, that was the theory was that it didn't happen at all. The trial counsel had initially intended to bring in these medical records to provide an explanation for why my client should have been carrying a knife. I don't know whether trial counsel would have gone further. It appears that trial counsel was unaware of post-traumatic stress syndrome as a defense. But his inclinations were right. But he but he got scared off of that and and and failed to develop it. But a lot of people in this case. I'm sorry. You have a lot of scared people in this case. Yes. Not only the defendant and the victim, but the lawyer. What about the judge? I can't speak for the judge. The ones that impacted my client were the were the victim. And it is trial counsel and my client. And and the I mean, how else can a person who's falsely accused defend himself in a situation that we have here, where we have no witnesses and all we have is the account of a victim? And we have witnesses. He indeed is a witness. He is a demon witness. And so for to tell the truth, he went on a stand. He was subject to cross-examination in the greatest detail. Right. There's to me that is not answered. Vigorous cross-examination is not going to be Perry Mason. We're not going to get some some revelation on on on the on the on the witness stand. The only thing that the tools that counsel had to bring to bear were anything that cast doubt on this on this on this testimony. And the most effective one that he had was it was the fact that would explain why his client is brandishing a knife. And it would explain why the why the victim might have thought that something more was going on here. I mean, we have I believe we have good evidence that the victim filled in his description about my client being dirty. My client was clean coming from home off of a date. But after he was frightened by this and was lying alongside of a planter box trying to not be apprehended, that's when the boy got dirty. And so that's the time that the victim finally had an opportunity to more coolly assess him. And that's why we get this this testimony about him being robbed by this, you know, by this dirty person brandishing a knife. So there's a good example that we can infer from the record of how the how the victim filled in. And and they did more than that. And he filled in the fact that my client asked for a wallet. And we can we can look at all of the other circumstances about how unlikely it is. And these are detailed in the brief. I don't want to use my time to go over them. But there's about 10 factors that are. Your time's over anyway. Okay. Thank you, counsel. Thank you. Your Honor, addressing first the matter of the White Council may not have introduced records or whether it should have medical records and whether or not there should have been an expert on the stand as to post-traumatic stress disorder, I'd like to stress at the outset, because I think it's something that hasn't been emphasized enough, that in the supplemental excerpts of record of this case, there's a preliminary hearing transcript from that prior conviction and of the prior conviction. And that's at supplemental excerpts of record of volume. I'm sorry, Your Honor, I have 40 percent hearing loss. Can you speak up a little louder? Okay. I don't think these mics actually just need to speak up. All right. I wanted to address the question of as to the introduction of medical records. The prosecutor said, well, I would introduce evidence to show that he did have intent. This prior conviction, the facts of the prior conviction from are in the supplemental excerpts of record of volume three in the pages around 766 to 769, my pagination, and then there's something here at 805 and at 828. But, for instance, then it goes on to about 774 in the late 700s of the SCR. This, the facts of this crime, and this occurred after these two incidents, the stabbing incident as to which medical records pertain and the shooting incident as to which records pertain. And those records as appendages to the state petitions are in my supplemental excerpts as well. But the preliminary hearing transcript of this prior conviction, which occurred after these incidents, when this man was supposed to be traumatized by post-traumatic stress disorder, that he went into a liquor store. The clerk became uncomfortable with him, and there was a car with the door open outside, front. He became very uncomfortable about the situation and asked for some ID. Apparently, Petitia became angry, stomped out of the store, left the store. There are people at the counter now buying products. He comes, so end of story, if he has a problem with violent confrontation. And this is, he comes back into the liquor store, and he tries to grab a 12-pack, which apparently was bottles of beer that had already been checked by the register for this customer. So they belonged to the customer at that point. He grabs them, starts the customer, who now, you know, has had this checked out, starts arguing, struggling with him, physically struggling with him to retain his purchase. And at this point, Petitia starts grabbing these bottles of beer and throwing them at the counter. So to say, as there is someplace, and I believe it may be in the declaration of Petitia, that this was nothing more than a simple attempt to walk out of the store with something, was far from true. I'll also stand here. It seems a little odd behavior, don't you think, to get so, to react so angrily to someone asking you for an ID, that you stomp out of the store, and then you come back and start throwing bottles? I mean, wouldn't that more support the defense argument that this guy was a little nuts from his prior experience? Well, the theory that's been propounded up until now by Petitia is that he has post-traumatic stress disorder, that he's in a situation where he's feeling threatened, has an excessive fear of being threatened. Well, he was threatened by being asked for his ID. Well, but he left the store. Right, but isn't what we're arguing about exactly what trial counsel should have been, I don't know if you were trial counsel or not, but had the lawyer for Aguirre introduced evidence of the impact of these very stressful situations, then you could have introduced this story, and then the trial counsel could have made what use they wanted to of it. I mean, it doesn't – it doesn't – I mean, actually, I don't mean to laugh about it, but it doesn't seem to be such a violent thing to support the attack with a knife or a wallet. Your Honor, it would seem to me that this was a question of anger, certainly. But the fear aspect, the crisis had passed, if he's afraid, if he's a fearful person. The crisis had passed. He was out of the store. Neither you or I are experts, so I don't know how we could really be. That's why probably an expert was needed. Well, I don't know, because they were standing at the counter. There was also another customer who had his 3-year-old son standing next to him. And so there were these – the situation, the context was customers waiting in line to buy products, and the person who had asked him about I.D. checking people out. If he's got a problem with excessive anger, I would say he probably does. Let me ask you something. If he hadn't – if this other evidence had come in and Aguirre didn't testify, that prior crime wouldn't have come in as evidence of a prior bad act, because it wasn't so similar or intricately intertwined with the wallet, the theft of a wallet, that it could come in that way. So it would only come in for impeachment purposes, right? Well, I might add one thing. It would come in even if the records were just introduced. In any way the post-traumatic stress disorder was introduced, it would come in. He did take bottles of beer. This was a theft as well. So if he tried to put on a defense, and he had experts who testified about he had been shot once, he said he'd been stabbed – when he was 16, he was shot. When he was 18, on the street. When he was 18, he was stabbed on the street. When he was 19, he was beaten up. And if they introduce this evidence to show that's why he carries a knife and that's why he's very jittery, because these three episodes have happened to him already, you would then show that he stole – tried to steal a carton of beer. Yes, he has an intent to steal. That he had a – yes, that he once tried to steal a carton of beer. And if – I guess the question is, would a reasonable lawyer be willing to take the risk that somebody who's got expert psychiatric testimony, that he's suffering from a post-traumatic, whatever it is, stress syndrome, resulting from this, that out on the street having suffered all these things, it's likely – I mean, there's a reasonable possibility, you could raise a reasonable doubt as to what happened in this incident, was that he carries a knife because he's afraid. The guy turned around and talked to him. He pulled out the knife and then it all ended. That's their version. Your version is, here's a guy who's a criminal. He once tried to steal a carton of beer. Is that better than having him come in and offer no defense, in effect? Well, he – I – it would be devastating to the defense. Absolutely devastating because he was willing to – he stole something. He stole beer. This time he was stealing money. I even have a few people on that jury who've stolen beer on occasion. He didn't know how – he didn't know how much money this fellow had. He was willing to engage in a violent crime to gain property. Now, whether he's – Well, you know, gaining property, stealing a carton of beer is not, what you say, a horrendous crime. It may be criminal. It may be morally offensive. But I don't – I think to most people it's one of the most serious things that happens if you steal a carton of beer. With all due respect, Your Honor, I would respectfully disagree as to the context of this crime, which would have come in if he was trying to introduce evidence that he had no intent because he suffered this post-traumatic stress disorder. During the course of the habeas corpus proceedings, was there any evidence from former counsel or about the knowledge of former counsel concerning the background? Yes, in that at the outset of the trial, counsel defense counsel – Of the habeas case, right? I'm talking about the habeas case. Oh, I'm sorry. Then I didn't understand. Is there anything in the habeas corpus record that said his trial counsel had actual knowledge of the prior conduct? There was – yes, because there was – because at least I know we submitted the reporter's transcripts. And one of the first things, as I recall, in the reporter's transcripts in this case was that counsel said, well, I'm going to introduce evidence of this attempted robbery conviction if you try to get the medical records in. His counsel raised up the trial flag, so to speak, that I'm thinking about introducing medical records of these two prior incidents that were – What's interesting is that his declaration that he submitted in the course of the district court habeas proceedings doesn't give that as a reason at all. What he says is that he had intended to submit these medical records, but he ultimately didn't because he felt his client's brother's testimony about the injuries was enough. He didn't say he made a strategic decision because if he introduced the records, then this evidence of this other crime would come. He doesn't say that. Your Honor, he was not asked. Now, I – is the way I read that. Now, I know that you can – that one can only carry that point so far. But he should have been asked, given the importance that's now being attached, in my opinion, in this case. He should have been asked by whom? He should have been asked why didn't you want him to testify and why – Well, that – I don't know. The issue that's certified is about the mental – the post-traumatic stress disorder. And he says – he declares in her oath that he did not introduce the records and he did not consult with an expert because he felt the brother's testimony was sufficient. He does not offer at all that there was a strategic choice based on the prior crime. And you would think if that was his reason, he would say it because that's probably a better reason than relying on the brother's testimony. Well, there was something at the start, again, when he raised his trial flag about possibly introducing medical records that his trial counsel did at trial, where he was – would introduce them in support of how traumatized this individual was. And the judge – I don't know if you'd call it a tentative ruling, but the judge certainly indicated you're going to have to show some relevance here. Right. In fact, the judge said twice he wasn't going to let the evidence in when the lawyer was attempting because he needed to get some sort of linkage. And my thought on that was if he had gotten an expert, that would show that this evidence was relevant to his mental state. Oh, I am so glad you asked because that is something we focused on to a great extent in our brief in this court, I believe, is that according to Stalon, as stated in the opinion, the actual mental thinking at the time of this confrontation between these two individuals, if I may call it that, the actual thinking, that can only come from Petitioner. Well, not really. I mean, whether or not experts testify all the time whether a person has the capability of having a specific intent to commit a crime. Capacity is not admissible, will not carry the day on an issue, so to speak. That is, you can have evidence as to the actual mental state of the individual at that time. But all the expert could do was provide an illumination, a diagnosis, and could use with that diagnosis the statement given to the expert, assuming it was Dr. Kaiser Boyd. And then he wouldn't have to testify. Well, he would because, Your Honor, I would beg to differ, because that's just a diagnosis of what could have been in the mind of the Petitioner at the time on the street out there in the dead of night, that the only way that the intent can be actually established is by the defendant explaining what his intent is at that time. In other words, somebody could even have post-traumatic stress disorder and someone could testify, an expert could testify, well, they're prone to have this, or this is what I think they had based on it. That's not sufficient. It's what's in their mental state at that time. And there's quite a bit, I think, in the Court of Appeal pertaining to that. In any event, he wanted to testify. I'm sorry, pardon? In any event, he wanted to testify. No. Part of his claim, at least as he raised it in the California Supreme Court, is that counsel was ineffective in advising him not to testify. Well, he says he wanted to testify, but he also characterizes this crime, Your Honor, as a, I forget the exact words of the declaration, but he says he thought it was just a mere kind of, was a snatch and grab, I think was his phrase. He may not have used that in the declaration, but he minimized it, said it was just an attempted theft, and he was very surprised he even was convicted of attempted robbery. Well, that's not what the facts bear out from that preliminary hearing. That was the prior crime. The prior crime. Yes, Your Honor. He was saying that his attorney, he said his attorney didn't want him to testify because of that prior crime. Right, but he wanted to testify. And he wanted to testify, but then he also describes the prior crime as being much less than it was, so he says. Well, what's wrong with that? He thought he was stealing beer, and it turns out to be attempted robbery. When he started, when he fought to get the beer to the point where he was throwing these missiles around. All right. Okay. I think we're way over time. Thanks very much. Thank you, Your Honors. Thank you. We'll give you a minute or two. Thank you, Your Honor. There's only one point that I'd like to make, and that is I think that post-traumatic stress syndrome may have been mischaracterized a little bit. The characteristics of it are an exaggerated startle response. It's perceiving a factual situation that a normal person wouldn't, or a reasonable person, normal person wouldn't see as threatening. But a person with PTSD will misinterpret, will exaggerate, and will see danger where no one else would see danger.  And that's why it was so important in this case, because he saw in the actions of Mr. Parra, he was startled by them because of all of the horrific things that had happened in his life. During the habeas proceedings trial, is there any professional evidence or a professional opinion that this person had a mental disease at the time the crime was committed? The elements of the crime aren't addressed at all because- He didn't ask about the elements of the crime. The question was, was there any evidence introduced in the habeas proceeding that at the time of the crime, he was suffering from PTSD or any mental disease? Oh, yes. I mean, the very nature of it is, is that it arises- What is the evidence that was submitted? Okay, it's in Dr. Kazer Boyd's, it's in Dr. Kazer Boyd's declaration. And it's because the very nature of the disease is one that is a result of a traumatic event. This boy had three traumatic events. We don't know which one of it- That's all. You've answered my question. The question was, was there any evidence submitted? The answer is yes. Yes. All right. Okay, thank you. Thank you very much. Case just arguably submitted. Mr. Peterman, thank you for accepting CJA vouchers. The court is interested in getting adequate defense for everybody that comes here. I feel that the thanks are due on my side. I carried this through the district court pro bono and I was just delighted that the court was able to pick up the tab. Thanks for showing up.  The next case to be argued is-
judges: Reinhardt, Beezer, Wardlaw